**PUBLIC COPY-SEALED MATERIAL DELETED**

## UNITED STATES COURT OF APPEALS
### For The
### DISTRICT OF COLUMBIA CIRCUIT

*In re* SI WIRELESS, LLC

      v.                                      **No. 25-1112**

**FEDERAL COMMUNICATIONS COMMISSION**

---

**Reply to Opposition to Petition for Mandamus to Compel Agency Action
Unlawfully Withheld or Unreasonably Delayed**

---

August 15, 2025                          Stephen C. Leckar
Kalbian Hagerty LLP
888-17th St., NW, Twelfth Floor
Washington, DC 20006
(202) 223-5600
sleckar@kalbianhagerty.com

**Table of Contents**

Table of Authorities ................................................................................ ii

Introduction .............................................................................................1

Counterstatement of the Case ..................................................................3

    A. The Opposition effectively concedes the TRAC factors ...............4

    B. The Opposition fails to proffer facts justifying continued
       delay ................................................................................................7

The FCC's Legal Arguments Are Meritless .........................................14

    A. The case isn't moot .....................................................................14

    B. The FCC cited decisions that don't demonstrate that an adequate
       alternative remedy to Mandamus exists ......................................15

Relief Sought .........................................................................................19

Conclusion .............................................................................................20

Certificate of Compliance ......................................................................21

Certificate of Filing and Service ...........................................................21

<u>**Cases**</u>

*Afghan and Iraqi Allies v. Blinken,*
    103 F.3d 807 (D.C. Cir. 2024)....................................................................5, 6

*American Broadcasting Co., Inc. v. FCC,*
    191 F.2d 492 (D.C. Cir. 1951)....................................................................15

*Carducci v. Regan,*
    714 F.2d 171 (D.C. Cir.1983)....................................................................14

*Career Education, Inc. v. Department of Education*
    6 F.3d 817 (D.C. Cir. 1993) ...................................................................... 17

*\*Core Communications v FCC,*
    531 F.3d 849 (D.C. Cir. 2008) ..................................................................19

*Cutler v. Hayes,*
    818 F.2d 879 (D.C. Cir. 1989) .....................................................................5

*Heckler v, Chaney,*
    470 U.S. 821 (1985) ..................................................................................18

*In re Al-Nashiri,*
    791 F.3d 71 (D.C. Cir. 2015) ...............................................................15, 16

*In re Bluewater Network,*
    103 F.3d 1305 (D.C. Cir. 2000)...................................................................6

*In re Flynn,*
    973 F.3d 74 (D.C. Cir. 2020) (*en banc*) ...............................................15, 16

*In re Hilliary Acquisition Corp.,*
    No. 24-1371 (D.C. Cir. Feb. 21, 2025) ......................................................18

*\*In re Monroe Communications Corp.,*
    840 F.2d 942 (D.C. Cir. 19884)...................................................................7

*In re Stone,*
    940 F.3d 1332 (D.C. Cir. 2019) .................................................................16

*McFarland v. Gregory*,
  425 F.2d 443 (2d Cir. 1970) ...........................................................10

*MCI Telecommunications. Corp. v. FCC,*
  627 F.2d 322 (D.C. Cir. 1980)..........................................................5

*NLRB v. Keller-Crescent Co.,*
  538 F.2d 1291 (7th Cir. 1976) ......................................................15

*Orion Communications Ltd. v. FCC*,
  131 F.3d 176 (D.C. Cir. 1997)..........................................................4

*\*Telecommunications Research & Action Center v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984).....................................................3,4, 5

*Texas v. United States*,
  798 F.3d 1108 (D.C. Cir. 2015) ...................................................18

*Trinity Broadcasting of Florida, Inc. v. FCC*,
  211 F.3d 618 (D.C. Cir. 2000)..........................................................4

## Administrative Decisions

*In the Matter of Bobby R. Owens, Sr.*,
  40 F.C.C.2d 330 (1973) ................................................................10

## Statutes

47 U.S.C. § 153 ..............................................................................13

47 U.S.C. § 1603(a)(6)...............................................................12,13

## Rules

Circuit Rule 36(e)(2) .....................................................................18

## Other Authorities

FCC Directive 1038-2 (Sept. 2024).................................................2, 8

H.R. Rep. 116-352, "Secure and Trusted Communications Networks Act of 2019"
(116th Cong., 1st Sess., Dec. 16, 2019)...........................................5

# UNITED STATES COURT OF APPEALS
## For The
## DISTRICT OF COLUMBIA CIRCUIT

*In re* **SI WIRELESS, LLC**

**v.**                                          **No. 25-1112**

**FEDERAL COMMUNICATIONS COMMISSION**

### Reply to Opposition to Petition for Mandamus to Compel Agency Action Unlawfully Withheld or Unreasonably Delayed

Petitioner SI Wireless, LLC ("SI") replies to the Federal Communications Commission's ("FCC") Opposition to SI's Petition for Mandamus ("Petition") to compel the FCC to determine SI's eligibility for funding under the Secure and Trusted Communications Networks Act's Reimbursement Program ("SCRP").

### Introduction

SI sued because the FCC wouldn't address SI's request to dissolve a funding freeze imposed in July 2024, after SI's payments had slowed to a trickle. Nothing changed until the Court's July 2nd order issued. A week later, the FCC's Chief Financial Officer ("CFO") extended the freeze indefinitely. Its subsequent Opposition neither addresses the well-known *TRAC* markers nor commits to a schedule ending an excessive delay that disserves Congress' intent that SCRP remediation occur swiftly, equitably and without administrative inefficiencies.

Moreover, the CFO's process is Kafkaesque. It claims that the latest freeze is based largely on secret "credible information." The Opposition distills to asserting that the underlying claim "appears" moot and an adequate alternative remedy exists because should the CFO decide SI's response SI can appeal to the Commission. Neither defense is meritorious.

Demanding that SI restart the process and then ask the full Commission to issue a decision—after having tried that route this spring—is cynical. The agency will dither unless it is placed on a timetable. Meanwhile SI can neither recoup its spending nor recover appreciable customer income. Its dire financial plight will only worsen and leave it with the unpalatable and inequitable option of bankruptcy.

Consider how the agency dealt with SI by starting with its Staff's procrastination. Last September SI responded to the CFO's initial freeze. The CFO sat for nine months without ever answering SI's response and later correspondence protesting the freeze. That inattention violated an unpublished internal directive requiring the CFO to make timely decisions when SCRP participants contest funding holds.[1]

---

[1]    FCC Directive 1038-2, §7(c) (Sept. 2024) (Supp. App'x:04-05).

The Commission? Somnolence *redux*.  It ignored SI's March 10th internal petition asking to lift the freeze within thirty days or SI would seek relief in the courts. Even then SI waited another week before taking that step.[2]

Back to the Staff.  The CFO sat for three more months, only awakening after the Court asked to hear the FCC's position.  The FCC hasn't hinted about a timetable for final agency action.  Its temporizing invites judicial interposition to stop its kicking the proverbial ball down the road. It declared a national emergency; SI responded; and yet the FCC will neither pay SI nor act on its claim.

### Counterstatement of the Case

The Opposition neither mentions *TRAC* nor rebuts SI's explanation of why that seminal decision and its progeny favor relief.  The FCC's excuses unwittingly confess that it neither digested the voluminous information which SI provided beginning last September nor ever acted diligently.[3]

---

[2]   Opposition at 8-9.

[3]   A gentle remonstrance. The FCC claims that SI received "multiple extensions of time below." Petition at 10.  Undersigned counsel was retained on July 26, 2024, and four days later requested a 30-day extension of time to September 12th because of the FCC's huge demands for information. SI timely secured a one-week extension to September 17th.  Whenever the FCC sought further information, SI responded promptly. (App'x:218-223).

A. <u>The Opposition effectively concedes the *TRAC* factors</u>.

Sometimes agency briefs shirk from answering matters relevant to a *TRAC* petition.[4] Such is the case here.

**1.** The FCC must consider providers' reasonable reliance interests.[5] It never challenged SI's proof of having a historical customer base of 30,000 subscribers, of whom all but a few had to be transferred for SI to participate in the SCRP. There is no dispute that SI studied FCC decisions (which "applauded" providers who started the rip-and-replace process before appropriations) and attended an FCC-sponsored seminar which assured providers of being reimbursed their reasonable costs of jettisoning Chinese equipment and rebuilding their networks, even when "this will mean starting over from scratch."[6]

The Opposition didn't deny that SI's twice-approved plans disclosed its vastly diminished base and corresponding need to expedite the reconstruction process. Nor does the Opposition question that SI kept the FCC informed of its

---

[4]   *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*").

[5]   *Trinity Broadcasting of Florida, Inc. v. FCC*, 211 F.3d 618, 631-632 (D.C. Cir. 2000) (citing *Orion Communications Ltd. v. FCC*, 131 F.3d 176, 181 (D.C. Cir. 1997)).

[6]   Petition at 9; (App'x:087-088).

progress and lack of customer revenue. Today SI is owed over $47 million for construction done long ago—an artificially low figure because the FCC won't accept further invoices from SI.  That backlog extends backwards over two years.[7]

The FCC's delay undermines Congress' benchmark expectation that providers' reconfigurations would be accomplished in about a year.[8]  The agency's lagging also stultifies SI's instituting badly-needed competitive service in its rural marketplace.[9]  Those are important *TRAC* public interest factors[10] which the Opposition doesn't debate.

**2.**    It remains uncontroverted that last September 17th SI provided the CFO a copy of SI's response to the FCC ███████████████ ("█") parallel

---

[7]  *Compare* Petition at 3-4, 6-18 *with* Opposition at 1-10.

[8]  *Cutler v. Hayes,* 818 F.2d 879, 895 (D.C. Cir. 1989).  *See also* H.R. Rep. 116-352, "Secure and Trusted Communications Networks Act of 2019" at 14 (116th Cong., 1st Sess., Dec. 16, 2019) (discussing need to complete projects swiftly).

[9]  Petition at 19, 22-23; (App'x:074,150-151, 228-229) (discussing market concentration and lack of competition).

[10]  *Afghan and Iraqi Allies v. Blinken*, 103 F.3d 807, 816 (D.C. Cir. 2024) (affirming relief) (citing *TRAC*, 750 F.2d at 80).  *See also MCI Telecommunications. Corp. v. FCC*, 627 F.2d 322, 341 (D.C. Cir. 1980) (pre-*TRAC*; "[c]omplex regulation must still be credible regulation; the delay at issue here threatens the FCC's credibility and has frustrated AT&T, its competitors, consumers, FCC Commissioners and this court.").

demand for answers to two thousand interrogatories (including subparts) and produced 84 GB of data.[11] SI supplied that information to the CFO in protesting the first freeze and later provided the CFO other documentary information independently and in tandem with answering ██'s further requests.[12] SI heard nothing from the CFO until another freeze issued nine months later.[13]

This inertia deals a continuing staggering blow to SI. It can't generate customer income because its approved plans entailed dismantling and then restoring its network and it doesn't receive Universal Service Fund subsidies.[14] Conversely the Opposition does not assert that the CFO dedicated staff time to reviewing SI's submissions or administering any higher priority programs than the SCRP.[15]

---

[11]  *Compare* Petition at 4-5 *with* Opposition at 1-10.

[12]  (*E.g.* App'x:145-147, 152-158, 2224-229).

[13]  Petition at 4-5 & n. 9-10 (citing correspondence with CFO reproduced in Appendix).

[14]  Petition at 4-5.

[15]  *Afghan and Iraqi Allies*, 103 F.3d at 819; *In re Bluewater Network*, 103 F.3d 1305, 1316 (D.C. Cir. 2000) (granting writ).

**3.** The Opposition neither says when the FCC will decide the longstanding funding freeze nor promises to pick up the pace.[16]

**4.** The Opposition ducks SI's retaliation claim. The initial freeze occurred just after SI's principal, who in trade publications and correspondence with the FCC had questioned its administration of SCRP, was featured in a WASHINGTON POST report about programmatic gaps—all validated in Congressional publications.[17] An unrebutted allegation of bad faith further justifies relief.[18]

B. <u>The Opposition fails to proffer facts justifying continued delay</u>.

How, then, does the FCC defend its procrastination? The answer is with: (a) the most rudimentary discussion of the facts; (b) no consideration of its choking SI's funding for two years before the first freeze, thereby curtailing SI's ability to finish construction and earn revenue; and (c) no thoughtful effort to address SI's

---

[16] *In re Monroe Communications Corp.*, 840 F.2d 942, 946-947 (D.C. Cir. 19884) (citing *TRAC*, 750 F.2d at 76).

[17] Petition at 21-22, 38-40. *See also* (App'x:152-198) (correspondence to ███ and CFO discussing and attaching SI's quarterly reports). SI's quest to obtain records via the FOIA process (Petition at 39) has yet to yield meaningful production. An opaque agency has hunkered down.

[18] *Monroe*, 840 F.2d at 947 (cleaned up).

legal arguments. The FCC must be directed to consider these and other conspicuous omissions swiftly on remand.

*First*, the FCC claims to be focusing on ███████████. Its Opposition and the CFO's recent freeze letter assert that unspecified "credible information" was obtained ██████████████████████████████████████ ████████████████████████████████████████████.

The "credible information" catchphrase parrots an internal directive that the CFO employs in freezes. This policy, as earlier stated, neither appears in the FEDERAL REGISTER nor the freeze notices.  SI only learned of it fortuitously.

After SI's counsel wrote the CFO asking for the documentation underlying its allegations, the CFO emailed a week later and refused disclosure.[19]  The CFO invoked Directive 1038-2, which prescribes how the CFO must announce, decide and administer freezes.  The policy reveals that the "confidential information" parlance is designed to conceal the ██'s workings.  No provision is made for consideration by an impartial FCC official or access to documentary support to rebut the CFO's claims.[20]

---

[19]  *Compare* Opposition at pp. 1, 9-10 & *with* Letter from Stephen Leckar-Dan Daley (July 21, 2025) (Sealed Supp. App'x:022) and E-mail from Dan Daley-Stephen Leckar (July 29, 2025) (Sealed Supp. App'x:023).

[20]  FCC Directive 1038-2, § 7(b) (Supp. App'x:009).

How it took ten months for an agency with a full complement of staff on a highest-priority program to contact five customers is as unexplained as what they were asked, what they stated and whether and where the underlying information exists. *What's more, the CFO won't disclose anything that could enable SI to understand this bald assertion's factual underpinnings and rebut the freeze.*

SI has reached [21] The technician who installed the equipment and monitored its usage as late as 2023 provided [22] Thus the FCC's threadbare claim to possessing "credible" evidence is unsubstantiated.

SI's answer to the CFO's latest freeze which SI filed with the FCC, contests the CFO's allegation. For purposes of mandamus relief, however, one point is

---

[21]      Declaration (Rural Connect);       Declarations (        );        Declaration (        );        Declaration. (Sealed Supp. App'x:012-019).

[22]      Declaration (Sealed Supp. App'x:020-020A).

unassailable: the FCC does not need limitless delay to evaluate whether SI fairly

claimed to ███████████████████████████████████████.[23]

    *Second*, the FCC bewails that after undefined "further investigation it

'remains unclear' whether SI has ongoing operations or whether it has been a

provider at any point during its participation in the [SCRP]."[24]  The Opposition is

unilluminating on why more time is necessary to discern whether SI provided

service "at any point" after qualifying for SCRP funds.  And reference to SI's

answers to Requests Nos. 21- 22 and 24, submitted last September to the CFO,

demonstrates another fundamental flaw in the FCC's position.

    A year ago, the FCC demanded that SI identify all customers that it had from

2021 onwards, by name, date, address, geolocation, and so forth.  SI responded to

with a narrative and 80 megabytes of data.[25]  The Opposition does not claim that

the CFO examined SI's submissions, which were made under oath.

---

[23]  (Supp. App'x:042-049; Sealed Supp. App'x:044-045). ████████████████████
████████████████████████████████████████. SI
reasonably presumed ████████
████████ *See In the Matter of Bobby R. Owens, Sr.*, 40 F.C.C.2d 330, 338
(1973) (citing *McFarland v. Gregory*, 425 F.2d 443[, 447] (2d Cir. 1970))
(recognizing evidentiary presumption of continuity).

[24]  Opposition at 10.

[25]  (Sealed Supp. App'x:025, 027, 35-39, 41) (narrative responses and extracts of
information SI provided CFO).

*Third*, the latest funding freeze and the Opposition reveal another reason to direct the FCC to stop dawdling. The CFO concedes "the FCC had knowledge that SI Wireless had begun the process of shutting down certain portions of its network when SI applied," yet claims the agency "had no reason to believe that SI Wireless would cease operations completely."[26] That's pretextual.

Proof of the FCC's dissembling is seen from its Opposition avoiding the SI's proof that the FCC approved SI's plans to dismantle its network, rebuild it and then restore service. For instance, in early 2022 SI wrote that it was "temporarily transitioning customers to other networks, then disassembling its existing network, and then bringing up the replacement network, restoring former customers and adding new customers to a modernized network."[27] The FCC knew that SI was "going about this in a different order (ie [*sic*] ripping then replacing instead of a simultaneous process,"[28] leaving SI without customer income.[29] Having approved SI's business model, the FCC is ill-equipped to quibble with the firm's inability to restore full service.

---

[26] CFO Notice, at p. 4 (July 11, 2025) (Supp. App'x:001-005).

[27] Petition at 13-14, 17.

[28] Petition at 17.

[29] *Id.* at 15-16.

Some boldness infects the FCC's tardy insistence on full continuous service. The SCRP statute does not require that throughout dismantling and renovation. And the FCC doesn't dispute that its labyrinthian reimbursement policies kept SI underfunded for years.[30] The FCC's lackadaisical funding and needless delay prevented SI's timely accomplishing its approved goals.

*Fourth*, the FCC's belief that constant service is a prerequisite for reimbursement misreads the Secure Networks Act. Eligibility is based on: (1) having 10 million or fewer customers and (2) having purchased or installed covered equipment.[31] The statute anticipates network dismantlement and replacement—but does not demand continuous service throughout that process.

The FCC's newfound insistence on constant customer service is belied by its past actions to the industry and to SI. As we have seen, the Staff acknowledged to the industry that some providers could encounter prolonged gaps in service. This topic was addressed at the September 2021 webinar that SI's principal, Leslie Williams, attended. The Staff overseeing the SCRP roll-out recognized that some providers would have to "start over from scratch." SI did that, but only after its regulatory counsel then consulted the agency, which gave her a go-ahead, saying

---

[30] *Id.* at 17-18.

[31] 47 U.S.C. § 1603(a).

nothing about any professed need for constant service.[32]  And SI devoted time, energy, and resources to dismantling and rebuilding its network without objection from the FCC.[33]  The Opposition evades these inconvenient truths.

The FCC doesn't need years to answer legal issues. It should be directed to address promptly whether the law demands continuous service.

*Fifth*, the Opposition ignored another legal defense to the government's *post hoc* rationalizations.  The statute provides that for eligibility purposes "the Commission shall consider the total number of customers served by the provider and any affiliates."[34]  If the FCC is now basing its hold on its interpretation of "customer count" it must include affiliated firms' customers. It cannot have it both ways. SI provided proof that relevant to the SCRP Program, Rural Connect, LLC, another internet provider serving customers, was an SI "affiliate." When SI applied to SCRP, Mr. Williams had near-total ownership of SI and was a director and Interim General Manager of Rural Connect. He then acquired 41% of that firm in

---

[32]  Petition at 9-11.

[33]  Nn. 27-29 and accompanying text.  Invitations to the FCC to visit SI's sites never were accepted. (*E.g.*, App'x:156).

[34]  47 U.S.C. § 1603(a)(6); *see also* 47 U.S.C. § 153(2) (ownership of at least 10% constitutes "control").

mid-2022.[35]   As an affiliate of SI, Rural Connect's customers are counted as SI's for SCRP eligibility.

The FCC has known of SI's legal position and supporting evidence for over a year.  Whatever the FCC's issue is on an Affiliate relationship, limitless time isn't needed to decide this legal issue, any more than the others.

There must be a tailored consequence when a federal agency defends itself by rewriting truth: the remedy here is placing it on a defined timetable to decide whether to lift the freeze, as discussed below.

## The FCC's Legal Arguments Are Meritless

The FCC's legal defenses are inadequately briefed, invoke easily distinguishable authority and tilt at windmills.

### A. The case isn't moot.

The FCC postulates an *ipse dixit* that the latest unlimited freeze order means that SI's claim "appears" moot.[36]  However, "where counsel has made no attempt to address the issue, we will not remedy the defect, especially where, as here, 'important questions of far-reaching significance' are involved."[37]  The CFO's

---

[35]  Petition at 20, 22; Ans. ▮ Req. 23 (Sealed Supp. App'x:041).

[36]  Opposition at 2, 10.

[37]  *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir.1983) (cleaned up).

extending a year-long funding freeze just after the Court requested the agency's position doesn't make SI's claim "appear" moot: the Opposition won't even predict how long (if ever) it will take to address SI's answer.

If anything, the FCC's circular theory is illogical: the CFO's notice does not purport to be final staff action: it invited further responses from SI before taking a definitive position but won't commit to a date by which the staff will decide. The Commissioners have manifested no willingness to act promptly, as evidenced by their inattentiveness to SI's internal mandamus-type application filed last March.

B. The FCC cited decisions that don't demonstrate that an adequate alternative remedy to Mandamus exists.

SI has no adequate available administrative remedies. It's pursuing a recognized remedy extending back seventy-five years.[38]

*In re Michael Flynn*[39] and *In re Al-Nashiri*[40] don't aid the FCC. Neither involved undue administrative delay.[41] In *Flynn* the prosecution sought to dismiss

---

[38] *American Broadcasting Co., Inc. v. FCC*, 191 F.2d 492, 501-502 (D.C. Cir. 1951) (court recognized that "we can provide 'a remedy against inaction….'").

[39] 973 F.3d 74 (D.C. Cir. 2020) (*en banc*) (cited in Opposition at 2-3, 12).

[40] 791 F.3d 71 (D.C. Cir. 2015) (cited in Opposition at 13).

[41] *See NLRB v. Keller-Crescent Co.*, 538 F.2d 1291,1299 (7th Cir. 1976) ("We should not … read the language of judicial opinions without regard to the factual circumstances of the litigation in which it appears or to the analytic framework in which the language is used.").

criminal charges, and the defendant sought to withdraw his guilty plea. After the

District Judge appointed an amicus to address the defendant's being held in

criminal contempt, the defendant sought mandamus.[42] This court emphasized that

"Petitioner has not cited any case in which our Court, or any court, issued the writ

to compel a district court to decide *an undecided motion in a particular way*—i.e.,

when the district court might yet decide the motion in that way on its own."[43] SI

isn't asking this Court to make that call. It's long past time the FCC do it.

    *Al-Nashiri* reaffirmed that "'the burdens of litigation are normally not a

sufficient basis for issuing the writ.'"[44] SI agrees, but that's not its claim. SI

merely wants the CFO and if need be, the Commission to act speedily and make a

timely final decision that, if necessary, can be appealed.

    Nor do the remaining decisions which the FCC proffered help its cause. Its

barren reference to *In re Stone*[45] fails to appreciate that defendant's tardy effort to

seek mandamus in a criminal prosecution bypassed a statute providing a direct

expeditious appeal.[46] *Stone* has nothing in common with this case.

---

[42] *Flynn*, 973 F.3d at 76-77.

[43] *Flynn*, 973 F.3d at 79 (emphasis original).

[44] *Al-Nashiri*, 791 F.3d at 80.

[45] 940 F.3d 1332 (D.C. Cir. 2019) (cited in Opposition at 11).

[46] *Id.* at 1337-1339.

*Career Education, Inc. v. Department of Education*[47] was described by this court as "an administrative law mess" and affords the FCC no solace. There a school sought mandamus and a preliminary injunction to enjoin the Government's funding termination and prosecution of a pending administrative proceeding against the school. The plaintiff also demanded a judicial determination "definitively constru[ing] the department's regulation that was at stake."[48]

The resulting appeal foundered because the agency had "promulgated extensive administrative procedures for hearing and appeal after notice of termination and for a show cause hearing" and the governing statute provided for "'reasonable notice and opportunity for a hearing on the record.'"[49] Requiring exhaustion was necessary "to give the Department's top level of appeal an opportunity to place an official imprimatur on the Department's interpretation of its regulations before it is reviewed by a federal court."[50]

---

[47]  6 F.3d 817 (D.C. Cir. 1993) (quoted in Opposition at 12).

[48]  *Career Education*, 6 F.3d at 818-820.

[49]  *Id.*, 6 F.3d at 818.

[50]  *Id.* at 820.

This case is not *Career Education* recast. No administrative action has been brought. Directive 1038-2 has no procedural protections. SI simply seeks a final agency decision about the freeze, albeit made on a judicially-imposed timetable.[51]

Lastly, the FCC cites an unpublished order denying a recent mandamus petition sought against it in this court.[52] The FCC represents that case presented "analogous circumstances"—noticeably undescribed.[53] Putting aside this Court's rule that an unpublished disposition "means that the panel sees no precedential value in that disposition,"[54] "appellate courts sit …essentially as arbiters of legal questions presented and argued by the parties before them.'"[55] All that can be discerned from the underlying order's one-paragraph discussion is that the Court concluded that the staff had made a final internally appealable decision appealable

---

[51] The FCC misreads SI's demand for relief. SI is only asking the Court to order the FCC to decide speedily whether to lift the freeze. *Compare* SI Petition at 40 *with* Opposition at 11 n.4. The Opposition's invoking *Heckler v. Chaney*, 470 U.S. 821 (1985), misses the mark.

[52] Opposition at 11-12 (citing *In re Hilliary Acquisition Corp*., No. 24-1371 (D.C. Cir. Feb. 21, 2025)).

[53] Opposition at 11.

[54] Circuit Rule 36(e)(2).

[55] *Texas v. United States*, 798 F.3d 1108, 1115 (D.C. Cir. 2015) (cleaned up).

to the Commission.  The CFO hasn't done that here and history tells us that unless forced to do so, it will linger indefinitely.

## Relief Sought

The CFO's recent extension of the funding freeze has pushed back the prospect of final administrative action occurring in any reasonable time.  After all, the last time around the CFO also invited SI to respond but did nothing for nine months after SI responded.  Today SI has filed with the FCC its answer to the CFO's latest notice.[56]

Given the FCC's stalling and failure to propose when final agency action will occur, it should be directed to finish the process at the earliest date the Court deems equitable.  The FCC should be directed to consider all material matters in dispute, including: (a) whether an Affiliate relationship exists; (b) whether under the circumstances the statute requires any level of service; (c)  whether SI provided service upon applying to SCRP; (d)  the existence and extent of reliance by SI on the FCC's actions and statements; (e) the consequences of funding gaps and delay on SI's approved business plan; and (f) the public interest in a competitive marketplace.  The panel should retain jurisdiction to ensure compliance with this case's disposition.[57]

---

[56]  (Supp. App'x:042-060; Sealed Supp. App'x:044-045) (SI Answer to CFO).

[57]  *Core Communications v FCC*, 531 F.3d 849, 861-862 (D.C. Cir. 2008).

**Conclusion**

The existing record establishes a claim for mandamus relief. Should the

Court desire oral argument SI would gladly appear on short notice.

Respectfully submitted,

/s/Stephen C. Leckar
Stephen C. Leckar, D.C. Bar # 281691
Kalbian Hagerty, LLP
888-17th St., NW, Twelfth Floor
Washington, D.C. 20006
(202) 223-5600
sleckar@kalbian-hagerty.com
*Counsel for Petitioner*

## Certificate of Compliance

1. This brief complies with type-volume limits and Circuit Rule 21 because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, table of contents, table of citations, signature block, certificates of counsel, addendum, attachments), this brief contains 3,881 words.

2. This brief complies with the typeface and type style requirements Because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14pt Times New Roman style.

Dated: August 15, 2025 /s/ Stephen C. Leckar
*Counsel for Petitioner*

## Certificate of Filing and Service

I certify that on this 15th day of August 2025, I caused copies of the Reply-Under Seal and Sealed Supplemental Appendix to be filed under seal electronically with the Clerk of the Court. I also caused copies of the Reply-Public Copy-Sealed Material Deleted and Public Appendix-Sealed Material in Separate Supplement to be filed electronically with the Clerk of the Court.

I correspondingly will cause a copy of each of the public and non-public briefs and appendices to be emailed promptly to counsel for the Federal Communications Commission.

/s/ Stephen C. Leckar
*Counsel for Petitioner*